**WO**                                                                                                          SKC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| D.J. Szymanski,<br><br>               Plaintiff,<br><br>v.<br><br>Centurion Health Incorporated, et al.,<br><br>               Defendants. | No. CV-21-00231-TUC-SHR<br><br>**Order Granting Summary Judgment** |

Plaintiff D.J. Szymanski, who is in custody of the Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR), brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. Defendants ADCRR's former contracted healthcare provider Centurion Health Incorporated (Centurion) and Nurse Practitioners (NPs) Natalie Bell and Lara Alonso have filed a Successive Motion for Summary Judgment. (Doc. 98.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 100), and he opposes the Motion. (Doc. 104.) Defendants filed a Reply. (Doc. 110.)

The Court will grant Defendants' Successive Motion for Summary Judgment and terminate this action.

**I.     Background**

On screening Plaintiff's First Amended Complaint under 28 U.S.C. § 1915A(a), the Court found Plaintiff stated an Eighth Amendment medical care claim against Defendants Centurion, NP Bell, NP Alonso, Director of Nursing (DON) D. Dennis, and Assistant

Director of Nursing (ADON) Jennifer Meyer based on these Defendants' alleged failures to treat Plaintiff's Hepatitis C Virus (HCV). (Doc. 19.) The Court later joined Naphcare, ADCRR's current contracted healthcare provider, for purposes of injunctive relief only. (Doc. 49.)

Defendants subsequently moved for summary judgment (Doc. 77), and the Court granted the Motion in part and denied it in part, leaving only Plaintiff's Eighth Amendment medical care claims for damages against Defendants Centurion, Bell, and Alonso. (Doc. 90.)

## II. Remaining Claims

In its Order addressing Defendants' initial Motion for Summary Judgment, the Court found triable issues of fact whether Defendants NP Bell and NP Alonso, who were responsible for conducting Plaintiff's chronic care visits for his HCV, deliberately disregarded Plaintiff's verbal and written complaints of gastrointestinal (GI) issues—including severe abdominal pain, bloody stools, and loss of bowel control—and other reported symptoms, including headaches and fatigue, which Plaintiff attributed to his HCV. (Doc. 90 at 15−17.) The Court also found triable issues of fact whether these symptoms were attributable to Plaintiff's HCV and whether, by failing to address these symptoms and by failing to refer Plaintiff to Defendant Centurion's HCV Committee for possible HCV treatment, Defendants Alonso and Bell were deliberately indifferent to Plaintiff's serious medical needs, resulting in needless pain and suffering to Plaintiff, in violation of his Eighth Amendment right to receive adequate medical care. (*Id.* at 16−19.)

The Court also denied summary judgment to Defendant Centurion, finding Defendants failed to meet their initial burden of showing Centurion's HCV treatment policies were not deliberately indifferent to Plaintiff's serious medical needs. (*Id.* at 20−22.) The Court noted Defendants failed to produce Centurion's relevant HCV policies; Centurion's Statewide Medical Director, Dr. Wendy Orm, materially misrepresented ADCRR's relevant HCV treatment guidelines, which Dr. Orm claimed Centurion followed, "matche[d] the most recent 'Gold Standard' HCV Guidelines by the American

Association for the Study of Liver Diseases and Infectious Diseases Society of America; and Defendants failed to show Centurion required its chronic care providers or its HCV Committee to consider prisoners' reported symptoms, such as those raised by Plaintiff, when deciding whether patients qualified for HCV treatment. (*Id.* at 3−5, 20−22.)

Defendants moved for reconsideration of this Order, arguing,

> In denying summary judgment as to the claims against NP Bell, NP Alonso, and Centurion, the Court was not given the opportunity to consider additional medical records showing Plaintiff's alleged abdominal symptoms were not the result of his chronic HCV infection, but rather a gastrointestinal condition[,] which neither provider had any involvement in diagnosing or treating.

(Doc. 91 at 2.)

The Court rejected this argument, noting, as movants, Defendants had the burden to produce this evidence and "to direct the Court to those portions of the record demonstrating an absence of a genuine issue of material fact regarding the merits of Plaintiff's claims against them." (Doc. 93 at 3 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).) The Court also found Defendants had not shown they could not have, with reasonable diligence, presented this evidence earlier. (*Id.* at 5.) The Court therefore denied Defendants' Motion for Reconsideration but nonetheless permitted Defendants to file a subsequent motion for summary judgment with this additional evidence.

## III. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322−23. The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099,

1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and explain how the fact in contention is material, i.e., how it affects the outcome of the suit under the governing law, and the dispute is genuine, i.e., a reasonable jury could return a verdict for the nonmovant based on the evidence. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**IV.   Preliminary Issues and Warning**

Instead of producing a new Statement of Facts in support of their Successive Motion for Summary Judgment, Defendants merely tacked on additional paragraphs to their original Statement of Facts in support of their previous Motion for Summary Judgment, which the Court denied, without attempting to consolidate or eliminate any duplicative, false, or conflicting statements of fact. (*Compare* Doc. 75, *with* Doc. 99.)

For example, in their instant Statement of Facts, Defendants provide the same facts about Plaintiff's October 8, 2020 chronic care visit with Defendant Bell as were in their previous Statement of Facts, asserting Plaintiff denied any HCV symptoms including bloody stools. (*See* Doc. 75 ¶ 17; Doc. 99 ¶ 17.) Then, in a much later paragraph, which is based in part on the new evidence Defendants produced in support of their Successive Motion for Summary Judgment, Defendants acknowledge for the first time Plaintiff

complained of bloody stools, and they cite to an updated declaration of NP Bell, stating Plaintiff complained of bloody stools and explaining what Bell did to address this complaint, thus leaving the Court with two conflicting sets of facts about the same visit in the same Statement of Facts. (*See* Doc. 99 ¶¶ 17, 66.)

Additionally, as with their previous Statement of Facts, Defendants did not arrange their facts in chronological order but separated them according to medical provider, so even closely-related facts tied to consecutive medical visits over a relatively short period of time are scattered in several places throughout their Statement of Facts, making it difficult to piece together the care Plaintiff received or failed to receive for the same complaint or to ascertain the relevant context of each provider's treatment decisions.

Coupled with the above-discussed duplications and contradictions, Defendants effectively expect both Plaintiff and the Court to navigate an unwieldy, duplicative, and internally contradictory Statement of Facts to try to establish and address the relevant facts Defendants offer in support of their Motion. This is not acceptable on a motion for summary judgment. *See* Fed R. Civ. P. 56(c), LRCiv 56.1(a); *Orr v. Bank of America*, 285 F.3d 764, 775 (9th Cir. 2002) ("[J]udges need not paw over the files without assistance from the parties." (alteration in original) (citation omitted)).

Of further concern, in addition to continuing to assert facts their own evidence now contradicts, Defendants did not eliminate or attempt to revise any statements of fact the Court in its prior Order noted were unsupported by the evidence or demonstrably false. Instead, Defendants continue to assert facts the Court has already rejected without providing any new facts or evidence to remedy the issues the Court identified in its prior summary judgment Order. (*See* Doc. 99 ¶¶ 7−12.) Although the Court only relied on Defendants' properly supported facts in its prior Order and will again only consider properly supported facts in support of Defendants' Successive Motion for Summary Judgment, the Court advises defense counsel to be more careful about what they include in statements of fact in the future.

## V.  Relevant Facts[1]

Plaintiff was diagnosed with HCV in early 2014.  (Doc. 99, Defs.' Statement of Facts (DSOF) ¶ 5; Doc. 107, Pl.'s Controverting Statement of Facts (PCSOF) ¶ 5.)

On November 1, 2019, Defendant NP Bell saw Plaintiff for a Chronic Care visit for HCV, and Bell reviewed Plaintiff's previous HCV lab results.  (DSOF ¶ 6.)  Bell noted Plaintiff denied abdominal pain, bloating, blood in urine/stool, or edema, but he had "occasional bouts of loose stool with accidents."  (Doc. 75-2 at 6−7.)  Bell ordered routine HCV labs before Plaintiff's next chronic care visit, and she ordered extra bed linen changes for 90 days.  (*Id.* at 11.)  Plaintiff requested HCV treatment, but Bell denied this request.  (PCSOF ¶ 6.)[2]

On April 21, 2020, NP Bell saw Plaintiff for his next Chronic Care appointment, and Bell noted Plaintiff denied abdominal pain, bloating, vision changes, headache, edema, or bloody stool/urine.  (DSOF ¶ 13.)  Plaintiff disputes he denied these symptoms and states he requested HCV treatment, but Bell denied his request.  (PCSOF ¶ 13.)  Bell submitted an order for routine HCV labs.  (DSOF ¶ 15.)

On September 25, 2020, Plaintiff submitted a health needs request (HNR), stating "I have been defecating and there has been blood in my stools.  I am in a lot of pain," and requesting to be moved to a medical unit.  (Doc. 105, Pl.'s Additional Statement of Facts (PASOF) ¶ 6; Doc. 84-1 at 17.)  Registered Nurse (RN) Amanda Landeros wrote the plan

---

[1] A more complete set of facts about Plaintiff's HCV-related medical care is set forth in the Court's prior summary judgment order.  (*See* Doc. 90 at 3−11.)  Because the Court denied summary judgment to Defendants based solely on their alleged deliberate indifference to Plaintiff's reported symptoms, which Defendants did not show were unrelated to Plaintiff's untreated HCV, and Defendants' Successive Motion for Summary Judgment is based on new evidence about these symptoms and the care Plaintiff received for them, the Court will not reproduce all the facts already set forth in its prior Order but will instead focus on Defendants' new facts and evidence.

[2] In DSOF ¶ 6, Defendants once again leave out the facts from Plaintiff's medical records showing Plaintiff complained of occasional bouts of loose stools and accidents and NP Bell ordered extra bed linens, and unlike for other visits, Defendants did not provide any updated/corrected facts about this visit elsewhere in their Statement of Facts.

was to take a stool sample for a hemoccult and Plaintiff was scheduled for a sick call. (Doc. 84-1 at 17–18.)

On October 8, 2020, NP Bell saw Plaintiff for his next Chronic Care appointment, and Bell noted Plaintiff denied nausea, vomiting, diarrhea, shortness of breath, abdominal pain, bloating, vision changes, headache, sore throat, earache, coughing, edema, or bloody urine, but he reported bloody stools. (DSOF ¶ 66.) Bell assessed bowel sounds and conducted a rectal exam, which showed no hemorrhoids, prostate masses, or bleeding masses to explain Plaintiff's symptoms. (*Id.*) Based on Plaintiff's latest HCV labs, Plaintiff's fibrosis score was F0, meaning no fibrosis, so Bell did not consider Plaintiff's bloody stool complaints indicative of worsening HCV or complications requiring urgent attention. (*Id.* ¶ 68.) Bell ordered routine HCV labs and a hemoccult, a diagnostic test that screens for blood in the stool. (*Id.* ¶ 67.)

On November 19, 2020, Plaintiff had an on-site hemoccult, which came back positive for blood in stools. (*Id.* ¶ 70.) On November 24, 2020, NP Jillian Riley submitted a request for an off-site gastroenterology consult. (*Id.*)

On January 15, 2021, Plaintiff had an off-site gastroenterology appointment with Dr. Mohammad Khan to assess his GI complaints, and Dr. Khan opined Plaintiff's symptoms were suggestive of gastroesophageal reflux disease and his bloody stools were most likely due to internal hemorrhoids. (DSOF ¶ 71; Doc. 91-1 at 2−3.) After this visit, NP Bell reviewed Dr. Khan's recommendations and submitted a request for a colonoscopy. (DSOF ¶ 72.)

On January 23, 2021, Plaintiff submitted an HNR, stating "my gastro-intestinal problem is bad with blood and pain, I need pain meds. And I need to renew my medical chronos for pull-ups, wipes, linens, lower bunk, showers, and chair. Please see me ASAP." (Doc. 84-1 at 19.) ADON Dennis responded under the Plan of Action, "1st HNR addressed has [illegible] GI consult." (*Id.*)

On February 13, 2021, Plaintiff returned to Dr. Khan for a colonoscopy, and Dr. Khan discovered two polyps on Plaintiff's colon, which he removed; rectal ulcers, which

were not bleeding at the time; and moderate, non-bleeding hemorrhoids. (DSOF ¶ 73.) The polyps were biopsied and confirmed Plaintiff had solitary rectal ulcers, which occur when sores develop in the rectum and can cause rectal bleeding/straining during bowel movements. (*Id.* ¶ 74.)

On May 17, 2021, Plaintiff submitted an Informal Complaint seeking direct-acting antiviral (DAA) medications to treat his HCV (DSOF ¶ 45), and on May 21, 2021, Plaintiff submitted an HNR, stating,

> Just recently, I had a colonoscopy due to blood in my bowels, my polyps are being analyzed. Daily activities are becoming harder . . . due to my gastro-intestinal problem, I can't control my bowels. I am in pain. Last year D.O.N. Palmer ok'd me to go to ADA housing. Please move me to 7A Medical ADA Housing so I can receive Assistance. Thank you.

(PASOF ¶ 9; Doc. 84-1 at 20.) Plaintiff was referred to the provider line. (Doc. 84-1 at 20.)

On May 25, 2021, RN Justin Rhodes saw Plaintiff in response to his HNR regarding loss of bowel control and request for ADA housing, and Rhodes referred Plaintiff to Dr. Armando Deguzman for further care. (DSOF ¶ 83.)

On June 2, 2021, Plaintiff saw Dr. Deguzman, and Dr. Deguzman noted Plaintiff's incontinence complaints and prior GI consultation results. (*Id.*) Dr. Deguzman prescribed fiber and Bentyl (used to treat irritable bowel syndrome), and authorized Plaintiff for a lower bunk. (*Id.*)

On June 8, 2021, ADON Dennis responded to Plaintiff's May 17, 2021 Informal Complaint seeking DAA medication and advised Plaintiff labs would be ordered to continually assess his priority for DAA treatment. (*Id.* ¶¶ 43−45.) She also entered a verbal order for a Hep C RNA Quant test to measure Plaintiff's viral load. (*Id.*)

On June 9, 2021, ADON Dennis conducted a no-contact Health Services Encounter in response to another Informal Complaint Plaintiff filed requesting DAA treatment, and she advised Plaintiff several criteria needed to be met before DAAs would be provided and new labs had been ordered and would be discussed at Plaintiff's next chronic care visit.

(*Id.* ¶ 45.)

On June 17, 2021, Plaintiff submitted an HNR, stating, "in my stomach near my liver area has been hurting really bad. I think it has to do with my hep c., please see me and stop my pain and fix my hep c. thank you." (PASOF ¶ 10; Doc. 84-1 at 21.) In response, RN Rhodes wrote Plaintiff was referred to the "Provider Line." (Doc. 84-1 at 21.) The same day, Plaintiff was seen by Nursing Supervisor Angela Simpson, and Simpson noted Plaintiff had bowel sounds in all quadrants, no palpable masses, and upper right quadrant pain, and she referred Plaintiff to NP Troyin for further treatment. (DSOF ¶ 84; Doc. 99-2 at 20.)

On June 29, 2021, Plaintiff was seen by NP Toyin, and NP Toyin "renewed Plaintiff's prescription for Bentyl and prescribed Pantoprazole (used to treat GERD)." (DSOF ¶ 84.)

On August 30, 2021, Plaintiff submitted an HNR, stating "I am having abdominal pain, fatigue and headaches. I am hurting, please help." (Doc. 84-1 at 22.) On September 2, 2021, ADON Dennis scheduled Plaintiff for sick call. (Doc. 84-1 at 23.)

On September 14, 2021, Plaintiff submitted another HNR, stating, "I feel fatigued and have abdominal pain," and on September 15, 2021, RN Darryl Thayer scheduled Plaintiff for sick call. (PASOF ¶ 13: Doc. 84-1 at 24.)

On September 20, 2021, Defendant NP Laura Alonso saw Plaintiff for his next Chronic Care appointment for his HCV. (DSOF ¶¶ 21, 51.) NP Alonso did not indicate whether Plaintiff had any subjective symptoms at the time. (Doc. 75-1 at 40.) She reviewed the results of Plaintiff's fibrosis test, showing F0−F1 stage fibrosis, indicating little to no liver scarring. (DSOF ¶ 51.) She also ordered follow-up labs, including a diagnostic panel, fibrosis test, and HCV RNA Quant test, to be scheduled prior to Plaintiff's next Chronic Care appointment. (*Id.* ¶ 53.)

On September 27, 2021, Plaintiff submitted an HNR, stating, "my stomach is constantly upset and I have been having blood in my stools. [P]lease help," and on September 28, 2021, RN Lisa Graybill scheduled Plaintiff for a sick call. (Doc. 84-1 at

25–26.)

On November 22, 2021, Plaintiff submitted an HNR, complaining of GI problems, including difficulty controlling his bowels and bloody stools. (PASOF ¶ 16; Doc. 105-2 at 22.) The response informed Plaintiff a "[follow-up] appt is scheduled." (Doc. 105-2 at 22.)

On March 15, 2022, NP King saw Plaintiff for his next Chronic Care visit for his HCV, and King noted Plaintiff denied any abdominal pain, fatigue, jaundice, or discoloration of stool/urine. (DSOF ¶ 24.) Plaintiff disputes he denied these symptoms and states he told NP King he had abdominal pain, fatigue, jaundice, and blood in stools/urine. (PCSOF ¶ 24.) NP King reviewed the results of Plaintiff's fibrosis test, which showed he had F0−F1 fibrosis; noted Plaintiff's HCV was under "good control"; scheduled Plaintiff for his next Chronic Care appointment; and advised Plaintiff how to mitigate his risk of HCV infection and complications by avoiding prison tattoos, IV drugs, and certain medications. (DSOF ¶ 24.) Plaintiff disputes NP King reviewed ways to mitigate his HCV risks and states he requested HCV treatment, but it was refused. (PCSOF ¶ 24.)

On March 16, 2022, Plaintiff had a follow up gastroenterology consult with Dr. Khan, and Dr. Khan again determined Plaintiff's symptoms were suggestive of gastroesophageal reflux disease and his bloody stools were most likely due to internal hemorrhoids. (DSOF ¶ 75.) Dr. Khan advised Plaintiff to increase fiber, recommended a hemorrhoidal cream and suppositories as needed, and recommended an exploratory endoscopy. (*Id.*) On March 18, 2022, Centurion providers prescribed anusol cream for Plaintiff's hemorrhoids. (*Id.* ¶ 76.)

On April 13, 2022, Plaintiff underwent an endoscopy, which detected a medium-sized hiatal hernia. (*Id.*) According to NP Bell, a hiatal hernia occurs when the upper part of the stomach bulges through the diaphragm into the chest cavity and can cause symptoms such as heartburn, abdominal discomfort, and rectal bleeding. (*Id.* ¶ 77.) Plaintiff also had a pathology analysis, which ruled out a bacterial infection in his GI system. (*Id.*)

On May 6, 2022, Plaintiff submitted an HNR, stating, "I have pain in my abdominal

area and am very tired." (PCSOF ¶ 78.) The same day, Plaintiff saw RN Yuhlanda Webb, and he reported, "It's been for years. Now that I found out I have the hernia, I was thinking it might be the Hep C. My skin's not popping out from the hernia. . . . Last week there were a couple days there was blood in my stool but not now. I used the anusol." (Doc. 91-7 at 2.) Plaintiff also pointed to his epigastric area and stated, "I just wanted it documented that I was having some pain there." (*Id.*)

On September 8, 2022, Dr. Dennis William saw Plaintiff for his last Chronic Care visit with a Centurion provider, and Dr. William reviewed the results of Plaintiff's fibrosis test, showing F0−F1 stage fibrosis, and ordered a follow-up fibrosis test. (DSOF ¶ 25.) The test Dr. William ordered did not take place before September 31, 2022, when Centurion's contract with ADCRR expired. (*Id.*) Plaintiff states he told Dr. William he had abdominal pain, fatigue, jaundice, and blood in stools/urine. (PCSOF ¶ 25.)

On October 5, 2022, after Naphcare took over as the ADCRR medical provider, Plaintiff submitted an HNR, stating, "I am pissing blood, in pain, it hurts immensely." (PASOF ¶ 19; Doc. 105-2 at 44.) Naphcare records show Plaintiff had a urinalysis, and it was positive for blood. (Doc. 105-2 at 45.)

On May 10, 2023, Naphcare providers approved Plaintiff to begin HCV treatment, and, on May 17, 2023, Plaintiff began receiving the anti-viral medication Mavyret. (DSOF ¶¶ 62−63.) He subsequently completed his 56-day treatment course without complications. (*Id.* ¶ 63.) Plaintiff was scheduled for follow up at the Chronic Care Clinic in mid-August 2023, with a separate follow-up scheduled for October 2023 to assess the effectiveness of his HCV treatment. (*Id.* ¶ 64.)

**VI.  Discussion**

    **A.  Eighth Amendment Legal Standard**

To prevail on an Eighth Amendment medical claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to this analysis: an objective prong and a subjective prong. As to the objective prong, a

prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citation omitted). Some circumstances showing serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059−60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

As to the subjective prong, a prisoner must show the defendant's response to his or her need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002) (internal quotation marks and citation omitted), or when they fail to respond to a prisoner's pain or possible medical need, *Jett*, 439 F.3d at 1096. But the deliberate-indifference doctrine is limited; an inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not support an Eighth Amendment claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citation omitted); *see Estelle*, 429 U.S. at 106 (finding negligence does not rise to the level of a constitutional violation). Further, a mere difference in medical opinion does not establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

**B.     Analysis**

Defendants do not argue Plaintiff did not have a serious medical need, and the undisputed evidence showing Plaintiff was diagnosed with HCV and his condition required regular chronic care visits, individualized medical assessments, laboratory tests, and

eventual DAA treatment is sufficient to show Plaintiff's HCV was worthy of comment and treatment and therefore constituted a serious medical need. *McGuckin*, 974 F.2d at 1059−60. Accordingly, the Court turns to whether the individual Corizon medical Defendants or Corizon as an entity were deliberately indifferent to Plaintiff's need.

### 1. Defendants Bell and Alonso

The Court already found in its previous summary judgment Order Defendants made an initial showing Defendants Bell and Alonso were not deliberately indifferent to Plaintiff's HCV. Regarding Bell, the Court found,

> The medical records and declaration evidence Defendants produced of Plaintiff's Chronic Care visits show Defendant Bell saw Plaintiff for his HCV four times at regular 6-month intervals over 18 months: on November 1, 2019, April 21, 2020, October 8, 2020, and March 31, 2021. (DSOF ¶¶ 6, 13, 17, 20.) Each time, Bell reviewed Plaintiff's labs and fibrosure test results, which showed Plaintiff had F0 to F1 fibrosis, meaning little to no liver damage; noted Plaintiff's lack of active symptoms; and scheduled follow up labs to continue monitoring the progression of Plaintiff's HCV. On this record, Defendants have met their initial burden of showing Bell did not know of and deliberately disregard any serious medical need for Plaintiff to receive HCV treatment.

(Doc. 90 at 15−16.)

The Court also found, however, Plaintiff's verbal and written complaints about his GI issues called into question "the entries in Plaintiff's Chronic Care records and Defendant Bell's avowals in her declaration stating Plaintiff consistently denied any active symptoms," and the medical record evidence showing Bell ordered a hemoccult suggested Bell was aware of Plaintiff's HNRs and verbal complaints of bloody stools. (*Id.* at 16−17.) The Court also found genuine issues of material fact about whether these symptoms were related to Plaintiff's untreated HCV, and, absent any evidence Plaintiff received follow-up testing or treatment for these symptoms, there was "a genuine issue of material fact . . . whether Defendant Bell knew of and deliberately disregarded" Plaintiff's need for HCV treatment. (*Id.* at 17.) The Court similarly concluded as to Defendant Alonso Plaintiff's

- 13 -

consistent verbal and written abdominal complaints created genuine issues of material fact "whether these symptoms were connected to Plaintiff's untreated HCV and whether Alonso's failure to address them was deliberately indifferent to Plaintiff's serious medical needs, causing Plaintiff to undergo unnecessary pain and suffering while he awaited HCV treatment." (*Id.* at 19.)

Defendants now argue there is no evidence Plaintiff's active symptoms, "including abdominal pain and bloody stools, were indicative of his worsening condition due to Hepatitis C." (Doc. 98 at 17.) Moreover, Defendants contend Plaintiff's medical providers, including Defendants Bell and Alonso, properly referred Plaintiff to a specialist for those issues. (*Id.*) Defendants point to the evidence showing outside specialist Dr. Khan diagnosed Plaintiff with gastroesophageal reflux disease, internal hemorrhoids, solitary rectal ulcers, and a hiatal hernia, not complications of HCV. (*Id.*) Defendants have also now produced Bell's and Alonso's professional medical opinions concluding Plaintiff's reported symptoms were not caused by his untreated HCV or suggestive of a need for emergent HCV treatment. Bell opines Plaintiff's complaints of bloody stools and abdominal pain were caused by the GI conditions Dr. Khan diagnosed in 2021 and 2022 and not by Plaintiff's HCV because, during the time Plaintiff was under Bell's care for his HCV, Plaintiff's fibrosis score never progressed beyond F1 (minimal fibrosis). (DSOF ¶ 79.) Alonso also opines based on Plaintiff's low fibrosis scores Plaintiff's GI issues were caused by something other than his HCV. (*Id.* ¶ 89.)

Finally, Defendants argue, even if Plaintiff could show Bell and Alonso were deliberately indifferent to Plaintiff's serious medical needs by denying him HCV treatment, Plaintiff's claims against them nonetheless fail because Plaintiff cannot show he suffered harm from his untreated HCV. (Doc. 98 at 18.)

On the updated record now before the Court, Defendants have met their initial burden of showing Defendants Bell and Alonso were not deliberately indifferent to any known serious medical needs of Plaintiff. Although the Court previously found questions of fact concerning whether Plaintiff's abdominal complaints were due to his untreated

1    HCV and whether Bell's and Alonso's denial of HCV treatment was deliberately
2    indifferent to these serious medical needs, Defendants have since produced these
3    providers' professional medical opinions concluding these symptoms were unrelated to
4    Plaintiff's HCV as well as medical record evidence showing off-site specialist Dr. Khan
5    attributed these symptoms to other medical issues, including gastroesophageal reflux
6    disease and internal hemorrhoids.  The evidence also shows, apart from ordering extra bed
7    linens to accommodate Plaintiff's reported loss of bowel control, a hemoccult to assess his
8    reports of bloody stools, and a colonoscopy in response to Dr. Khan's findings, Bell and
9    Alonso were not directly involved in Plaintiff's medical care for these issues, which
10   included specialist consultations with Dr. Khan, a colonoscopy, an endoscopy,
11   medications, and follow-up appointments with Centurion nursing staff and other medical
12   providers.  Consequently, even if Plaintiff could show he did not receive proper medical
13   treatment for these issues, any deficiencies in this care cannot be attributed to Bell and
14   Alonso.  The inquiry into a defendant's liability for deliberate indifference "must be
15   individualized and focus on the duties and responsibilities of each individual defendant
16   whose acts or omissions are alleged to have caused a constitutional deprivation."  *Leer v.*
17   *Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see Rizzo v. Goode*, 423 U.S. 362, 370–71,
18   375–77 (1976).

19        Plaintiff fails to produce any medical evidence to create a genuine issue of material
20   fact regarding whether his GI symptoms were caused by his HCV, and by failing to provide
21   HCV treatment, whether Defendants Bell and Alonso were deliberately indifferent to his
22   serious medical needs.  Even if Plaintiff could show his reported symptoms were caused
23   by his untreated HCV, this would not demonstrate Bell and Alonso were deliberately
24   indifferent because the evidence shows these providers reasonably relied on their medical
25   knowledge, training, and experience, together with their review of Plaintiff's fibrosis
26   scores, to determine otherwise.  Although Plaintiff disputes these providers' conclusions,
27   a mere difference in medical opinion does not establish deliberate indifference.  *Jackson*,
28   90 F.3d at 332.  Moreover, even if Bell and Alonso mistakenly concluded Plaintiff did not

1 need emergent HCV treatment to treat his reported symptoms, this would, at most, show
2 negligence, not that they knew of and deliberately disregarded Plaintiff's serious medical
3 needs. *Wilhelm*, 680 F.3d at 1122 (noting negligence in diagnosing or treating a medical
4 condition does not support an Eighth Amendment claim).

5 Alternatively, even if Plaintiff could show denying him HCV treatment was
6 deliberately indifferent, he fails to create a genuine issue of material fact regarding whether
7 the lack of more immediate HCV treatment caused him harm. The Court previously noted
8 needless pain and suffering is sufficient harm to support an Eighth Amendment claim.
9 (Doc. 90 at 17 (citing *McGuckin*, 974 F.2d at 1060 (holding pain and anguish suffered by
10 prisoner constituted harm sufficient to support a § 1983 action)).) Here, though, the
11 medical evidence shows Plaintiff's pain and suffering were caused by diagnosed GI
12 conditions and a hiatal hernia, not his HCV, and Plaintiff received regular medical care for
13 these conditions, including off-site specialist appointments, diagnostic procedures, and
14 medications. Even if Plaintiff's reported symptoms were not ultimately resolved during
15 the time of this action, Plaintiff cannot show his pain and suffering were due to deliberately
16 indifferent care by Centurion medical staff, including Defendants Bell and Alonso.
17 Plaintiff's fibrosis scores, which remained at F0−F1 over the time of this action, also do
18 not show Plaintiff suffered increased liver damage due to his untreated HCV.

19 In summary, Defendants have met their initial burden of showing Defendants Bell
20 and Alonso were not deliberately indifferent to Plaintiff's serious medical needs and did
21 not cause him injury, and Plaintiff fails to create a genuine issue for trial as to these required
22 showings. The Court will grant summary judgment in favor of Defendants Bell and Alonso
23 and dismiss these Defendants from this action.

### 2. Centurion

25 Defendants did not include Defendant Centurion in their Successive Motion for
26 Summary Judgment. (Doc. 98 at 1.) The Court will nonetheless sua sponte grant summary
27 judgment to Centurion because Plaintiff's inability to show he received deliberately
28 indifferent medical care for his HCV under Centurion's HCV treatment policies is fatal to

his *Monell* claim against Centurion. *See United States v. Grayson*, 879 F.2d 620, 625 (9th Cir. 1989) ("A district court may grant summary judgment without notice if the losing party has had a full and fair opportunity to ventilate the issues involved in the motion." (internal quotation marks and citation omitted)).

To maintain a claim against Defendant Centurion as a private entity fulfilling a public function, Plaintiff must meet the test articulated in *Monell v. New York Department of Social Services*, 436 U.S. 658, 690–94 (1978). *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law). Accordingly, Centurion can only be held liable under § 1983 for its employees' civil rights deprivations if Plaintiff can show an official policy or custom caused the constitutional violation. *Monell*, 436 U.S. at 694. To make this showing, Plaintiff must demonstrate the following: (1) he was deprived of a constitutional right; (2) Centurion had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

As discussed, Plaintiff fails to produce sufficient evidence to create a triable issue of fact regarding whether Defendants Bell and Alonso or any other Centurion medical staff were deliberately indifferent to Plaintiff's serious medical needs or whether their failure to treat Plaintiff's HCV caused Plaintiff harm. Absent any such evidence, Plaintiff cannot show he suffered a constitutional violation or Centurion's alleged HCV treatment policies were deliberately indifferent and the moving force behind his alleged injuries. The Court will grant summary judgment in favor of the remaining Defendant, Centurion, and terminate this action.

. . . .

. . . .

. . . .

. . . .

**IT IS ORDERED**:

(1) Defendants' Successive Motion for Summary Judgment (Doc. 98) is **GRANTED**; Plaintiff's remaining Eighth Amendment medical care claims against Defendants Bell, Alonso, and Centurion are **DISMISSED with prejudice**.

(2) The action is **TERMINATED**. The Clerk of Court must enter judgment accordingly.

Dated this 30th day of September, 2024.

Honorable Scott H. Rash
United States District Judge